Council, please step up and identify yourselves if you will. My name is Pete Skro with the State Appellate Defender's Office for Appellant J'Corey Duncan. Say it again. Pete Skro with the State Appellate Defender's Office for the Appellant. Good morning, Your Honors. My name is Judy DeAngelis with the Cook County State's Attorney's Office representing the people along with my co-counsel. Assistant State's Attorney Annette Collins. I'll be addressing two of the State's arguments as well as the trial error. Very well. Fifteen minutes per side. Reserve your time for rebuttal if you choose, Counsel. May it please the Court, for argument today I would like to address the hearsay and confrontation clause issues raised in arguments three and four. And I will stand on the arguments made in opening brief for arguments one and two. Wait, wait, wait, wait. You're only going to address hearsay? The hearsay and confrontation clause arguments I raised in the arguments. I want to hear the other. I'm not interested in the hearsay. You don't want to argue the point here on Batson? You want to quit right now? I'm telling you, you should address the other if you wish to have an opportunity to succeed. Okay. Okay, Your Honor. If you want a few seconds to regroup your thoughts, take it and do that. But I'm saying we're more interested in the first argument. The other two arguments, we know the law and we're not finding much of value in the brief. Okay, Your Honor. Sure. So why don't you take two or three minutes? Unless you're ready. Otherwise, we'll step down for two or three minutes and let you regroup. And I'm sorry to do that to you, but as I say, Crawford is not going to get you anywhere. Okay? Okay. Crawford's not going to get me anywhere on either of the hearsay statements. That is correct. That's Justice Smith's position. We'd like to hear about that. You can argue a little for them. We'd like to hear about Batson. We do want to hear about Batson, though. It doesn't come up that often. And I'd say it's 90-10. Okay, Your Honors. Moving on to the Batson issue. That's what I'm saying. If you want ten minutes, we'll give it to you. No, that's okay. Okay, in this case in which you had a crime allegedly committed by an African-American defendant where there were four white police officers who testified against him, the state only used discriminatory challenges to challenge African-American jurors. They used two to challenge African-American jurors for the jury of 12, and another alternate juror was also excused who was African-American. Now, defense counsel raised Batson challenges. After each one of Batson issues, after each one of these challenges, and the trial court, rather than have the state provide the race-neutral reasons for the strikes, the trial court provided its own reasons for the strikes. Did the trial court provide race-neutral reasons, or was the trial court addressing whether there was a prima facie case established to even ask the state for an explanation? I think that the trial court was addressing race-neutral reasons because if you look at what the trial court stated, it stated that, for instance, the first juror. We'll let you skip the next two of the important ones. Okay. I mean, the judge can get by on the first one. But the question is, does the judge get by on the next two? It does not appear that she gave the state or defense counsel an opportunity to do anything. She just kind of took control. Yes, Your Honor, I believe she especially. On the second one, I think it's clearly a race-neutral reason because it's not about numbers, percentages, or anything about the prosecutor's questions because this was a very general voir dire that was conducted where the trial court just asked the jurors very general statements about their employment, their marriage, their kids, where they lived, and that was about it. And so when you look at what the trial court said about the second juror that was excused, she said that it's obvious why she was struck. She doesn't contribute anything to society. She doesn't do anything except go see movies. She sits at home and watches television and skates. Yeah. And goes skating. So she couldn't be a good juror. Which I'm not exactly sure how she was able to glean that from her statements where the only questions she asked were that she said she was a grandmother, she had some grown children, she liked skating and movies, and that was about it. But I think that if you look at that reason, that's clearly something that the state maybe could articulate for a periphery challenge. Like, well, you know, we thought that the way she looked, the way she appeared, she's not bright, she's not articulate. But that's what the trial court said. She basically provided the state its own reasons for these strikes. So she, in essence, violated the, what, the Hernandez case? She collapsed the hearing? Yes, Your Honor. I think that that's one way because this would not be relevant unless a prima facie case had been met. So, yes, that's a collapsing of it. And it's even more erroneous that a collapsing by providing the reasons instead of asking the state to provide the reasons. I mean, the purpose of Batson is to prevent the state from excluding jurors on the basis of race. And it's impossible for the trial court to properly assess, or for a reviewing court, really, to make a determination of whether the prosecutor was engaged in this improper excluding of jurors when the trial court provides the reasons. Because now we no longer have the ability to look at and see, well, were these valid race-neutral reasons or was it, you know, was there an inference that this was actually done to exclude African-American jurors? And I think in a case like this, courts recognize when you have an African-American defendant and, you know, four white victims, now the state points out that there were two African-American victims as well. But the fact remains you had four white police officers who testified and were victims against this defendant. Well, you had at least two African-American victims who went to the hospital, too. Yes, Your Honor. And I don't think that that necessarily negates the idea, though, that you have important witnesses who were, and victims, who were white. So there is a cross-racial nature to this crime, which is a very important factor in looking at Batson challenges. So I think that this was a complete collapsing of an improper Batson hearing, where the court provides its own race-neutral reasons. And, again, after the third challenge, once again, the court doesn't ask the state to provide any race-neutral reasons. It, once again, says, you know, I've made the record. I think that it's, you know, basically exhibits the misunderstanding the trial court was operating under. It's not up to the trial court to make the record of why these African-American jurors were struck. It's up to the trial, to the state's attorney, to make the record. So that Your Honors, a reviewing court, can make sure that there's not being discrimination in the use of peremptory challenges. And I think if you look at, you know, they didn't exclude any white jurors with their peremptory challenges to the state. It was only used to exclude African-American jurors. And the use of these peremptory challenges decreased the percentage of African-American jurors on the jury. So, therefore, I think that because this was a completely improper Batson hearing, where the trial court, rather than the state, provided the race-neutral reasons, I think this case needs to be remanded for a proper Batson hearing. The court made the defense give race-neutral reasons when they pursued their reverse, state pursued their reverse Batson claims. I believe four or five Caucasian jurors were excused. And the court had no difficulty in asking for race-neutral reasons from the defense, did she? No, and I find that somewhat problematic. I don't know that, I mean, it shows that the trial court understood, at least in some cases, that the party who's being accused of using peremptory challenges in a discriminatory manner has the burden. And it's unclear why the percentages, she would have not, she would have thought the state had made a prima facie case of defense using peremptory challenges when the state used all of its peremptory challenges on African-American jurors and never asked them to provide race-neutral reasons for the strikes. But, yes, Your Honor, she did, the defense counsel was forced to articulate race-neutral reasons, which I think just highlights the improper nature of the hearing on defense counsel's Batson challenge. It was entirely appropriate for the state at that point to give race-neutral reasons for the strikes. If possible, I... Go ahead. I think that I would really like to get into this hearsay. Here's the issue, because... I'd like to hear, go ahead. I think that in this case, you had testimony from a non-testifying co-defendant implicating the defendant in this crime that violated, first of all, it wasn't admissible under state hearsay law, and it violated his rights under the Confrontation Clause. If you look at the first statement happened when Mr. Wells, the co-defendant, was arrested at the crime scene handcuffed, an officer came up and said, you're in trouble, Officer Ryan was hit with a shotgun. Over defense objection, the state was able to introduce testimony that the co-defendant said, the shotgun wasn't mine, it was my brother's. And then the state was able to introduce evidence that Mr. Duncan and Mr. Wells were brothers. So, first of all, the statement was admitted as a statement made by a co-conspirator, which it clearly was not. At that point, the conspiracy was finished. It didn't conceal anything. And as the Illinois Supreme Court and people of the department makes clear, statements made by a co-defendant to officers that are meant to deflect blame onto another defendant are not statements made in furtherance of a conspiracy. But I think even more importantly, these statements were testimonial, as that term is defined in Crawford. And therefore... How do you get to that conclusion? Well, Crawford says statements made to officers are categorically testimonial. But it depends on the purpose. Sure. The purpose that person is there to be interviewed for. Exactly right, Your Honor. And I think if you look at people, especially when they discuss, you know, what is from the point of view, would the declarant believe that a statement could be used against a defendant? Well, at that point, didn't Judge Lampkin indicate that there was no identification of the defendant? Right. That the witness, Wells, I think it was, said my brother had the shotgun, that he could have had several brothers, that it was... He didn't name the defendant, did he? Yes, Your Honor, that's correct. But then when defense counsel at a sidebar said, let's stop, then I don't want to introduce that they're brothers, she allowed them, she specifically allowed them three times, and in closing, repeatedly it was made clear that they were brothers. So I don't think, I mean, when you have, they're tried together. I mean, separate juries, but they're sitting there together, and you have... They're not tried together. You had three separate juries. Three separate juries, but the defendants were all sitting there together as defendants. They were not sequestered during most of the trial, just for various cross-examinations or specific witness. But I just mean, I think it's... The confrontation clause cannot be subverted by just allowing the state to say, well, he said his brother did it, and then we're going to allow them to introduce that they're brothers, but maybe the jury will think there's some unnamed other brother. I mean, they're on the indictment together. He says my brother did it. I think that that's very clear to the jury who he's talking about. But getting back to your point, Justice Cheryl Smith, is essentially, and in Dennis v. Washington, it's from the point of view of the declarant, would he believe that the statement could be used against the defendant? And in this case, of course, that's what he was hoping. He was told he was in trouble for hitting an officer, and he says, no, don't blame me, my brother did it. That's exactly the type of statement that is, you know, a declarant would believe could be used against the defendant. But unfortunately, that isn't the defendant. That defendant isn't present when that statement was made and is not involved at that point directly. So the purpose the officers are asking the question is, what does it do to you, not what does it do to him? So the question then still becomes, is that testamentary? Because it's not focused on you. Well, but I think it was focused on Mr. Duncan, and that's why it essentially says, look at whether a declarant would believe it could be used against the defendant. And in this case, he's saying, don't blame me, blame the defendant. So that's exactly the thing that's testimonial. He's telling officers to put the blame onto Mr. Duncan. And I don't think that there's any way to construe that as something that you would conceive that could be used against the defendant. So I think it clearly is testimonial, not to mention when you tell officers about people committing a crime, I mean, that's categorically what Crawford said is testimony. And so, yes, Your Honors, I think that this is obviously testimonial hearsay. It violated his rights under the Confrontation Clause, and the state was able to repeatedly make use of this testimony to get in that a non-testifying co-defendant implicated Mr. Duncan in the crime. Had the officers recovered the shotgun at the time the statement was made by Wells? I'm not sure. I believe – I don't know if there's any direct testimony of exactly what time the shotgun was recovered. There were guns recovered in the alley, I believe. Yes, Your Honor. The gun was recovered. But once again, I think that just makes clear, whether their gun was recovered or not, Mr. Wells is telling the officers, don't blame me, blame my brother. So I think that that is the type of – whether a gun had been recovered or not, that's a testimonial statement. It's a statement that anyone, even a reasonable person, would believe that could be used against the defendant. He's hoping it's going to be used against the defendant. He's hoping to deflect blame from himself and put it on to Mr. Duncan. So, I mean, I think it's clear that, you know, under Bruton, it's long been recognized. You cannot have statements from a non-testifying co-defendant that implicate the defendant. It's incredibly devastating to his defense. You don't get a chance to cross-examine this defendant. It's exactly what we had here, and it's exactly what's prohibited by the Confrontation Clause of the Constitution. If there's no more questions, I would like to reserve a couple minutes for rebuttal, if I could have. Very well. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Again, my name is Judy DeAngelis, and I will be addressing the Batson issue. Very well. Your Honors, no prima facie case was established in this case, and Judge Lampkin's decision was not against the manifest way to the evidence. Although defendant argues today that this was an interracial crime, that was never brought up at trial, that was not one of the relevant circumstances that he brought forth in order to substantiate his Batson motion on appeal. He does argue that, and we would state that this is not an interracial crime. Defendant seems to forget that he and his cohorts went out to shoot gangster disciples. They were shooting at alleged black men and not white men, and defendant admits in his statement to the Assistant State's Attorney, I believe it's Supplemental Record, page 249, that he didn't know who he was shooting at, if it was whites or blacks. And as Your Honors pointed out, the only people that were actual victims of the shootings, the ones that were hurt, were Smith and Bullock. Bullock sustained life-threatening injuries, and they were both black, and so was co-defendant Wells, who was injured. The only injury that occurred to one of the officers was Officer Ryan, and he apparently had a wound in his hand from a pellet from the shotgun. So we would argue that this is not an interracial crime. There's no relevant circumstance, including numbers, that would prove that defendant had established a prima facie case. In a couple of these cases, did defense counsel have an opportunity to articulate his reasons, or was that collapsed so that he didn't get an opportunity to even argue why he thought? I don't believe that Judge Lampkin cut anyone off. She just stated in support of her finding that there was no prima facie case, that she saw both jurors speak at the voir dire. She knew what the relevant circumstances were, certainly under Batson. She's a judge that's presumed to know the law, and those relevant circumstances are not limited to the six or seven that are cited in those Batson cases. But did she ever make a prima facie finding for the record and specify to the state and to the defense to make a specific record, or did she make her own record and not allow them to do anything? Well, what she did was she stated that she, based on the record, believed that there was no reason for the state to go any further. She stated why she thought the state had not established a prima facie case, or that, excuse me, that the defendant had not... Because a little old lady sits at home and watches TV. This is a record to knock a juror. And this is what a judge can do? In other words, obviate the whole thing? No, Your Honor, and in fact... In other words, be a state's attorney in place of the state's attorney. No, Your Honor, I don't believe that's the way the record reads. It actually says that Diane DeHart was a young lady. And in the motion for a new trial, Judge Lampkin makes clear that she found that there was no pattern of exclusion. She states on the record, I actually said if there was a pattern. It was certainly more evident with counsel trying to strike off white people. And she made the statement, even though it may not have been as clear as any reviewing court would like, it certainly was clear in the judge's statement on the record that she found no prima facie case. Well, where was there any articulation as to the third juror, the alternate juror? The alternate juror, First Your Honors, we would argue that any discussion or argument regarding the alternates is completely waived. There is no statement on the record by anyone as to what the races were of those alternate jurors. And in fact, it becomes very important here because Ashley Payson was a female white juror who was selected where there were six whites on the jury, three Hispanics, one Indian, and two blacks on the initial jury. But then when trials started, Ashley Payson was nowhere to be found. And they substituted Larissa Ingram, who was the first alternate, and there was never any statement on the record as to what race she was. The only statement that was made was that Denise O'Neill was African American. And defense says in their brief that it's unlikely that any other alternate jurors were black. However, that's not the law. We can't presume or assume whether any of those jurors were, in fact, black. And it was the defense's burden to preserve that record, and they did not. So we would argue that that entire argument is waived. Regardless, even if we were to look at those numbers, again, our argument is the same. No prima facie case was established. The relevant circumstances that this court and other courts review, along with Judge Lampkin's decision, is certainly not against the manifest way to the evidence. And in fact, as I stated in the motion for new trial, she made very clear and defense counsel made very clear as to what his decision was when choosing this jury. And not to say what's good for the goose is good for the gander, but it cannot be forgotten that this defense attorney clearly stated on the record that he was excluding whites because they were racist, because they lived on the southwest side. You've referred several times to the standard of review, the manifest way. Isn't there a line of cases that say where the allegations concern the conduct or misconduct of the court, it's a de novo standard? Aren't there cases that say that? There are cases, Your Honor, but based on this record and what Judge Lampkin was reviewing in terms of the voir dire and the testimony at this trial, the statements made, we would stand on our brief that it is an abuse of discretion based on Judge Lampkin's the second issue if you're referring to that. But Batson, our argument would remain that it's against the manifest way to the evidence in terms of a prima facie case under Batson. Are you denying that there was a disproportionate use of challenges against African-Americans? Your Honor, in our brief we said that there were two challenges that were made. They were, in fact, two against African-Americans. But numbers can be skewed any which way you want to. There were two that sat on the jury. So that means 50% of the African-Americans were, in fact, seated on the jury. That's another factor in the prima facie analysis. Absolutely. All of those factors were taken into consideration. We have to, and we are allowed to presume that, that the judge does know the law and that she was certainly aware of Batson and she was quite aware on the defense side, too, as she was ruling on our reverse Batson motions. And she made it very clear. She, in fact, gave the defendant every benefit of the doubt. Even after he said that he was excluding two white men because they lived in the southwest suburbs and everyone out there were racist, she allowed those men to be peremptory challenged and not put defendant in a situation where he would be forced to take what he considered to be racist men that he stated on the record were racist to be serving on his jury. So I think it's clear from this record that Judge Lampkin indeed knew the law, knew that there was no prima facie case, and knew that there was no reason for the state to give race-neutral reasons. As to the other issue regarding Judge Lampkin's decisions and her statements that she made, I'm not sure if the court wanted to hear anything about that, but I would state that anything that Judge Lampkin did state on the record was in direct, as a direct result of what was stated by defense counsel and all of the colloquy that happened regarding her statements about African Americans and that blacks are abject in defense. You take the position, contrary to the defense, that the statements of Judge Lampkin were not race-neutral explanations? She did not usurp the power of the defense or the state? Yes, Your Honor. I agree that they were not race-neutral reasons. She may not have stated it exactly the way, again, any reviewing court would like a judge to state it, but that does not mean that the defendant is deserving of any relief. She looked at all of the relevant circumstances, and these circumstances that she stated on the record were, again, simply part of the relevant circumstances. She's not limited to a set number. And in Batson it says that, you know, you look at the relevant circumstances, they include but are not limited to. And the United States Supreme Court made clear that they are confident that these judges can tell a true case of discrimination from a false one, and I would state and the people would state that Judge Lampkin indeed knew that the assistant state attorneys in this case were not racially discriminating and that there was no inference of racial discrimination. Your Honors, if there are no more questions, I would then. I'd like you to respond to counsel's Crawford point. Oh, that's the other comment. Okay. Well, let me ask this question. It's undoubtedly that the judge didn't think that her state's attorneys in her courtroom were exercising these peremptory challenges for racially discriminating reasons, but when we read the record and when this judge supplies the reasons, that doesn't allow us to make that determination, does it? That does not allow you to view the credibility or the way, like I said, that a reviewing court would like to if you feel, for whatever reason, those are reasons, but we're stating our interpretation of this record is that the judge knew precisely what she was doing and that she found based on what she said that that was simply part of the prima facie case. And you can view that and determine whether or not her finding was against the manifest weight of the evidence, and we would state that it is not. Thank you, Your Honors. Good morning, Your Honors. Good morning. In the remaining time, I'd like to address the trial error that the defendant is raising. Before I get into the substance of it, there's a couple of misrepresentations, I believe, that are before the court based on counsel's argument. Factually, the evidence does not disclose any questioning of the co-defendant, Willie Wells, at all. What the record reveals through Officer May's testimony is that while Officer May stood guard until a paramedic transport could take the co-defendant to the hospital, another officer approached Officer May. And in the presence of Willie Wells, the two officers had a conversation. So this was a spontaneous utterance, you say? Absolutely, it was a spontaneous utterance. It fits completely squarely into that hearsay exception. Now, the other thing that defendants said that I believe is a misrepresentation is a legal misrepresentation. Crawford absolutely does not stand for the proposition that all statements to police officers are categorical testimonial statements. That's, in fact, refuted by the subsequent case of Davis. There, there was, of course, an entire conversation with a 911 dispatcher who was an agent of the police, and there was questioning in that case. And what Davis indicated was that those circumstances did not indicate that the statements made were testimonial in nature. The other thing that defendants said about Crawford that I believe also is a misstatement of that case is that all statements about people committing a crime are categorical. And, of course, again, that has been refuted not just by Stackley in the Illinois Supreme Court, but also by the U.S. Supreme Court multiple times. It is our position that this case, because it does not involve any interrogation, any questioning of a suspect, that it does not fit within the categorical definition of testimonial. Likewise, because this statement was made under circumstances that couldn't have possibly indicated to anyone on the scene, whether it be the declarant, Willie Wells, or the police officer, that this statement was being taken in anticipation or later use at trial, because the circumstances under no way support that interpretation, that this statement was non-testimonial. Stackley supports this interpretation, as does Crawford, Davis, and virtually the entire progeny of new Sixth Amendment cases. I'd also like to make one additional point. In his brief, defense counsel has raised both a Bruton and a Crawford claim, both under the auspices of the Sixth Amendment Confrontation Clause. It appears as if he's put Bruton aside, and I would suggest that that is a very good decision. Bruton has not been overruled, but it has been subsumed within the Confrontation Clause analysis as expressed in Crawford. That decision and that finding has not yet been made in Illinois, but it is fully consonant with multiple circuits in the federal courts. And it's also supported by Crawford itself. Crawford made mention of the Bruton case, but when it made mention of the Bruton case, it in no way endorsed the analysis of Bruton. It simply said that Bruton is one of our past line of cases, that when we apply the testimonial analysis that we are now engaging in, the result would have been the same. So, in other words, Crawford looked to Bruton and said, we have been doing this for a long time before Ohio versus Roberts took us astray. And what we really are doing is looking to determine if the statement is testimonial. And, of course, in Bruton the statement was testimonial because it was a co-defendant's confession obtained during interrogation at a police station. Nobody is suggesting that those types of statements are not testimonial. What we do have is a very unique circumstance in this case involving a complete outburst to a police officer on the scene, no doubt directed at the police officer, but also no doubt not a result of questioning. The other couple of points that I want to make factually are very simple. This statement, simply because it has a hint of self-interest, does not mean that it's testimonial, nor does it mean that it can't be an excited utterance. In fact, when we take a look at the statement itself, I didn't have the shotgun, my brother did, that's not just exculpatory, that's inculpatory as well. That discloses a knowledge of what just happened and the weaponry involved at the scene. So I would suggest to your honors that that basis for defendant claiming that it's testimonial is really a red herring and it's distracting because we have to look at the totality of the circumstance, not the accusatory content of the statement, that's not the litmus test for testimonial, and not simply the self-preservation aspect of the statement. There's another point I'd like to make and it'll be the last point I make. If these police officers were actually questioning the suspect on the scene, that would have been non-testimonial and it would have been non-testimonial because it would have been in response to an ongoing emergency. Your honor asked counsel if the shotgun was recovered. And counsel appeared to indicate that there was a gun recovered in the alley. That gun was the rifle because Willie Wells had discarded and dropped the rifle just before he fell. He was the one armed with the rifle. The shotgun was not recovered, had not been recovered, nor had either of the two other shooters in this case. The shotgun was not recovered until much later during a canvas of the area and it was recovered one and a half blocks away from where Willie Wells fell. So under these circumstances, had the police taken it upon themselves in interrogation of a suspect on the scene, that would have been, no doubt, absolutely in response to an ongoing emergency because there were two armed defenders who had just essentially unloaded massive weaponry upon citizens on the street. At this point, the officers didn't know that it was just a thanks to disciple vice lord moment. It could have been a scenario where three offenders are going around shooting at any innocent people on the street. Under these circumstances, your honor, based on the totality of these circumstances, the environment in which Wells made this statement was the antithesis of a calculated, dispassionate account meant to be used in a criminal investigation or a trial. And for this reason and those stated in our briefs, we would ask that this both of them and affirm defendant's conviction and sentence. Thank you. Thank you. I'd like to make one point about counsel's claim that because this was not police interrogation, the United States Supreme Court in Davis v. Washington in Hammond, Indiana made clear that interrogation is not required for a statement to be considered testimonial. They said the founders would have considered volunteered testimony, completely outside of police interrogation, testimonial under certain circumstances. And as Stetschley has looked at it, those circumstances are whether the person in the declared position would believe it could be used against the defendant. In this case, it's clear that someone who has been told he's in trouble for using the shotgun says, no, it was not me, it was someone else. That's the type of statement that can be used against a defendant. So there is no requirement for police interrogation for a statement to be testimonial. And this statement was made to police officers, which also relates to it does, it's not that all statements about crime are testimonial. Statements about crime to police officers are testimonial because when you make a statement about crime to a police officer, you know it is possible that it would be used against the defendant. And just one more. So I know you don't agree with me, but I think that only applies to the specific defendant that's making the statement, not as to other defendants. But you disagree with me, so go ahead. Well, no, I think that it applies to who you're making it about. If you look at Davis and Stetschley, it's a person making a statement about someone else, which is what we have here.  All there has to be is an inference that discrimination may have been involved. All of these inquiries need to come at a later stage when the state articulates the race-neutral reasons. And the defense made a crime-efficient case. The prosecutor improperly collapsed it and gave its own race-neutral reasons. If there are no more questions. Thank you. Very interesting arguments. The matter will be taken under advisement.